UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| BEN DAVID BRUCKER,<br>　　　　Plaintiff,<br>　　v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　Defendant. | Case No. 16-cv-03165-RMI<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 26, 33 |

Plaintiff Ben David Brucker seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. (AR 1-6.) The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 6, 7) and both parties have moved for summary judgment (Docs. 26, 33). For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiff filed his initial application for Title II and Title XVI benefits on June 26, 2013, alleging disability commencing June 10, 2011. (Administrative Record ("AR") 254-60. 261-69.) His application was initially denied on October 10, 2013. (AR 126-31.) The Commissioner denied reconsideration on February 22, 2014. (AR 138-44.) Plaintiff filed a request for hearing with an ALJ. (AR 146-47.) Hearings were held on October 16, 2014, and November 13, 2014. (AR 27-69, 509-543.) The ALJ issued an unfavorable decision on December 23, 2014. (AR 8-21.) A timely request for Appeals Council review was denied on April 12, 2016. (AR 1-6.)

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.1.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step

---

[1]The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will only cite to the SSI regulations herein unless noted otherwise.

sequential evaluation. (AR 8-21.)

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date since June 10, 2011. (AR 13.)

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: Asperger syndrome, mild; attention deficit hyperactivity disorder ("ADHD"), mild; mood disorder NOS, mild to moderate; and anxiety symptoms without meeting criteria for specific disorder. (AR 13.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id.* If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 14-15.) The ALJ assessed Plaintiff as retaining the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant can have only occasional contact with the public, supervisors, and coworkers. (AR 15-19.)

At Step Four, the ALJ must determine whether the complaint has the RFC to perform the requirements of his past relevant work. *See id.* § 416.920(e) and 416.945. The ALJ compared the residual functional capacity assessed to the demands of Plaintiff's past relevant work as a compliance auditor; programmer; computer help desk representative; and researcher, and decided

3

that Plaintiff can perform this work.

At Step Five, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. *See id*. §416.920(g). If the claimant is able to do other work, he is not disabled. The ALJ concluded in this case that even if Plaintiff was not able to return to his past jobs, there would be a significant number of jobs in the state of California and nationally that Plaintiff could perform within the residual functional capacity found by the ALJ. (AR 19-21.) The ALJ thus found that Plaintiff had not been under a disability, as defined in the Social Security Act between June 10, 2011, and the date of the decision. (AR 21.)

**SUMMARY OF MEDICAL EXPERTS**

Plaintiff received treatment from Andrew Leeds, Ph.D., between October 3, 2011, and March 21, 2013. (AR 357.) Dr. Leeds completed an assessment of Plaintiff in March 2013, and in December 2013. (AR 360-362; 491-495.)

Plaintiff received weekly treatment from Eric Ryan, Ph.D., beginning on June 18, 2013 and extending through at least October 21, 2014. (AR 415; 496-500.)

Plaintiff received treatment from Isaac Gardner, M.D., from November 2013 to August 2014. (AR 431, 448-454.)

State agency physician L. Colsey, M.D. conducted the record review for the State agency on initial determination. (AR 81.)

State agency reviewing psychologist and medical doctor Tawnya Brode, Psy.D., and M. Legarda, M.D., provided review on reconsideration. (AR 116-118.)

The medical/psychological expert, Glenn Griffin, Ph.D., testified at the hearing before the ALJ. (AR 25.) He reviewed the record evidence and had an opportunity to hear Plaintiff's testimony and ask Plaintiff questions. (AR 16.)

**DISCUSSION**

Rejection of Opinions of Treating Physicians

Plaintiff contends that the ALJ committed reversible error in determining Plaintiff's RFD by failing to articulate specific and legitimate reasons for rejecting the opinions of the treating physicians. He argues that this is particularly true because the State agency physicians agreed

with the treating physicians that Plaintiff could at best perform simple repetitive tasks. Plaintiff claims that the ALJ merely summarized the opinions of the treating sources, stated that Dr. Griffin found the opinions unsupported by the objective record, and then agreed with Dr. Griffin. Plaintiff claims that the ALJ failed to pinpoint portions of the treating source opinions and explain with sufficiency why he was rejecting them.

"In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [their] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Courts "distinguish between among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id*. (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the fact and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ began his analysis of Plaintiff's RFD with the statement, "[o]n balance, and for the reasons described below, I find the claimant is limited in his ability to work only to the extent he is limited to occasional contact with the public, supervisors and coworkers, <u>a conclusion based on the testimony of Dr. Griffin, the claimant's own testimony and the objective medical record</u>." (Emphasis added.) (AR 16.) The ALJ reviewed Plaintiff's testimony at the hearing, including the fact that he had a blog analyzing biblical passages from 2005 and on random topics from 2007, but had not blogged in the past year because he lost interest in it. (*Id.*) The ALJ noted that Plaintiff testified that he tried to look for work but was unsuccessful. (*Id*.) The ALJ further noted that Plaintiff testified that he was currently taking online courses without special accommodation at

5

Saddleback College and Yuba City College and was on track with all his courses. (*Id*.)

In reviewing the testimony of Dr. Griffin, the ALJ noted initially that the testimony was given after Dr. Griffin questioned Plaintiff and obtained Plaintiff's own testimony. (AR 16.) The ALJ stated that Dr. Griffin found that Plaintiff had mild Asperger's syndrome, mild ADHD, mild to moderate depressive disorder, with some anxiety symptoms, although Plaintiff did not meet the criteria for panic disorder or generalized anxiety disorder. (AR 16.) The ALJ stated that Dr. Griffin found that Plaintiff was limited to occasional contact with the public, supervisors and coworkers. (AR 16.) Finally, the ALJ noted that in response to Plaintiff's representative's comment that Plaintiff had some GAF scores of 38 and 50, Dr. Griffin stated that clinicians find GAF scores unreliable and inconsistent, and they should not be given great weight. (*Id*.)

The ALJ summarized the opinions of treating physicians Ryan, Leeds, and Gardner. As to Dr. Leeds, the ALJ found that in his March 2013 assessment of Plaintiff, Dr. Leeds found that he had a good ability to carry out simple instructions, fair ability to maintain concentration, attention and persistence, and a poor ability to complete a workday and workweek. (AR 18.) The ALJ noted that in Dr. Leeds's December 2013 assessment of Plaintiff, he found that Plaintiff would be absent from work three to more days a month. Finally, the ALJ noted that Dr. Leeds also found that Plaintiff had a limited ability to perform detailed work, maintain attendance, work in coordination with others, complete a normal workday and workweek, respond appropriately to changes and deal with normal work stress. *Id*.

With regard to Dr. Ryan, the ALJ noted that he found Plaintiff unable to maintain attention for a two-hour segment and complete a normal workday and workweek. (AR 18.) The ALJ further noted that Dr. Ryan opined that Plaintiff would likely be absent from work three or more days a month. (*Id*.)

Regarding Dr. Gardner, the ALJ reviewed the fact that he found Plaintiff limited in his ability to interact with the public, to make appropriate work decisions, make simple work decisions, complete a normal workday and workweek, and respond to work changes. (AR18). The ALJ also noted that Dr. Gardner found that Plaintiff would be likely to be absent from work three or more days a month. (*Id*.)

The ALJ then held as follows:

> As indicated the undersigned accords these assessments little weight. Dr. Griffin noted that the assessments did not comport with the objective record, and the undersigned agrees with Dr. Griffin's assessment. These assessments contradict with [sic] the evidence of record, including testimony the claimant provided to Dr. Griffin in response to his questions, showing the claimant was currently taking a tax course and online accounting courses, earning B grades. The claimant has also been able to perform some work for his mother in shopping and computer work and do editing and blog writing. Thus, the claimant's own testimony indicated he is able to work, albeit with some social functioning limitations. In addition, the treatment notes, while showing depression and anxiety, with all three stating he could not attend work consistently, the course of treatment pursued by them have [sic] not been consistent with what one would expect if the claimant were truly disabled, as reported, *e.g.*, the claimant had not undergone hospitalization for his allegedly serious mental health issues with treatment notes showing normal mental status examinations. Dr. Leeds reported the claimant had a GAF of 38, which is considerably lower than the GAFs of 47-49 he assessed in his treatment notes, thus providing inconsistent information and evaluation. Furthermore, much of the treatment notes reflect [sic] the claimant's depression was related to situational problems, including employment, separation from his wife and twin children, moving in with his mother, and financial problems.
>
> In sum, the above residual functional capacity assessment is supported by the testimony of Dr. Griffin, the medical expert, and the objective evidence of record.

(AR 19.)

Contrary to Plaintiff's contention, the ALJ did not simply summarize the opinions of the treating physicians, and agree with Dr. Griffin's view that those opinions were unsupported by the objective record. As expressly stated by the ALJ, his conclusion regarding Plaintiff's RFG was based on the testimony of Dr. Griffin, the claimant's own testimony and the objective medical record, which he reviewed at length. As required under *Reddick*, the ALJ provided a detailed and thorough summary of the facts, and identified the specific portions of Plaintiff's testimony and the medical record which support his rejection of the opinions of the treating physicians. (AR 15-19.) The court thus finds the ALJ provided specific and legitimate reasons that are supported by substantial evidence for his rejection of those opinions. *See Bayliss*, 427 F.3d at 1216. The court finds no error.

//

//

United States District Court
Northern District of California

Acceptance of Testimony by Vocational Expert

Plaintiff contends that the ALJ erred in accepting testimony from a vocational expert which had an unexplained apparent conflict with the Dictionary of Occupational Titles ("DOT"). The vocational expert testified there were four specific job titles for Brucker's past relevant work, identifying the DOT section for each job: coffee maker, DOT 317.684-010; programmer, DOT 030.162-010; technical support specialist, DOT 033.162-018; and statistical data analyst, DOT 020.167-026. (AR 33.) Plaintiff argues that he does not have the RFC to meet the requirements of the occupation of computer programmer, which he claims requires dealing with people as a primary temperament. However, the DOT described the programmer job as dealing "Significant[ly]" with data, "Not Significant[ly]" with speaking or signaling to people, and "Significant[ly]" with operating and controlling things. *See* DOT 030.162-010. Furthermore, under the nonexertional limitations to Plaintiff's RFC, the ALJ found that Plaintiff can have occasional contact with the public, supervisors, and coworkers; he did not find that Plaintiff can have no contact with other people. (AR 15.) The court finds no conflict between Plaintiff's RFC and the occupation of programmer. The case cited by Plaintiff, *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), is not on point. It concerns requiring an ALJ to inquire whether the testimony of a vocational expert conflicts with the Dictionary of Occupational Titles before relying on the testimony regarding the requirements of a particular job. That was not the issue in this case. The court finds no error. However, even if the ALJ erred in finding that Plaintiff could perform the job of programmer, the error was harmless. *See Purser v. Colvin*, No. 3:15-CV-05845 KLS, 2016 WL 3356193, at *3 (W.D.Wash. June 17, 2016) (ALJ's error at Step Five found harmless based on existence of significant number of remaining jobs). Here, the ALJ identified three prior jobs held by Plaintiff in addition to that of programmer that he was capable of performing.

Plaintiff further argues that the ALJ erred by finding that Plaintiff could perform his past work as a compliance auditor, computer help desk representative, and researcher without citing to the appropriate sections of the DOT. Plaintiff has cited no authority showing that this imperfection on the part of the ALJ constitutes error, much less prejudicial error. Moreover,

Plaintiff's representative stipulated at the November 13, 2014 hearing that given Plaintiff's RFC limitation of only occasional contact with the public, supervisors and co-workers, there would be jobs available in the state and national economies. (AR 541-42.) Thus, any error was harmless. *Tommasetti v.* Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ's Step Four error harmless in light of alternative finding at Step Five).

## CONCLUSION

Based on the foregoing, the court HEREBY DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: July 12, 2018

ROBERT M. ILLMAN
United States Magistrate Judge